FILED
July 26, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002805166

7

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Proposed Attorneys for Chapter 11 Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**(SACRAMENTO DIVISION)**

In re:

MATTERHORN GROUP, INC.,

Debtor.

VITAFREZE FROZEN CONFECTIONS, INC.,

Debtor.

DELUXE ICE CREAM COMPANY,

Debtor.

☒ Affects ALL DEBTORS
☐ Affects only MATTERHORN GROUP, INC.
☐ Affects only VITAFREZE FROZEN CONFECTIONS, INC.
☐ Affects only DELUXE ICE CREAM COMPANY

[Proposed] Lead Case No. 10-39672 (MSM)
[Proposed] Jointly Administered with Case Nos. 10-39664 (MSM), and 10-39670 (MSM).[1]

DC No. LNB-1

Chapter 11 Cases

**DEBTORS' EMERGENCY MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL ON AN INTERIM BASIS PENDING A FINAL HEARING, (2) SCHEDULING A FINAL HEARING, (3) AUTHORIZING THE DEBTORS' CONTINUED USE OF CERTAIN PORTIONS OF THE DEBTORS' CASH MANAGEMENT SYSTEM, AND (4) AUTHORIZING THE MAINTENANCE OF THE DEBTORS' EXISTING BANK ACCOUNTS FOR AN INTERIM PERIOD**

Hearing:
Date: TBD
Time: TBD
Place: Department A
Judge Michael S. McManus
Courtroom No. 28
Floor No. 7
Robert T. Matsui Courthouse
501 I Street
Sacramento, CA 95814

[1] Motion for Joint Administration pending.

Matterhorn Group, Inc. ("MGI"), Vitafreze Frozen Confections, Inc. ("Vitafreze"), and Deluxe Ice Cream Company ("Deluxe"), the debtors and debtors in possession in the above-captioned (proposed) jointly administered Chapter 11 bankruptcy cases (collectively, the "Debtors"), hereby move, by way of this motion (the "Motion"), for an order (1) authorizing the Debtors' use of cash collateral on an interim basis pending a final hearing, (2) scheduling a final hearing, (3) authorizing the Debtors' continued use of certain portions of the Debtors' cash management system, and (4) authorizing the maintenance of the Debtors' existing bank accounts for an interim period. This Motion is brought pursuant to 11 U.S.C. §§ 101, 105(a) and 363, Fed.R.Bankr.P. 4001(b) and 9014, and LBR 9014-1 and is based on the concurrently filed Notice of this Motion and the Memorandum of Points and Authorities, declaration(s) and exhibits in support hereof.

As discussed in the accompanying Memorandum of Points and Authorities in support of the Motion (the "Memorandum"), the Debtors filed their voluntary Chapter 11 bankruptcy cases on July 26, 2010 (the "Petition Date"). The Debtors continue to operate their business, manage their financial affairs, and operate their bankruptcy estates as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

MGI owns 100% of the equity of Vitafreze and Deluxe.[2] The Debtors are in the frozen dessert industry. Collectively, the Debtors are one of the largest independent producers of ice cream and water-ice novelty products in the United States. The Debtors, which had gross revenues of approximately $54,436,328 in 2009, operate from manufacturing facilities located in Sacramento, California, and Salem, Oregon, and have approximately 31 non-union employees and 226 union employees. The Debtors' administrative office is located in Las Vegas, Nevada.

The Debtors primary secured creditor is Key Bank, N.A. (the "Bank"). As of the Petition Date, the Debtor owed the Bank approximately $1,249,983 on a term loan (the "Term Loan") and approximately $9,314,953 on a revolving line of credit (the "Line" and together with the Term

[2] MGI also owns 100% of the equity of Matterhorn Ice Cream, Inc., which entity is not operating and has not filed a bankruptcy case.

Loan, the "Bank Loans"). The Bank Loans are allegedly secured by first priority liens on substantially all of the Debtors' assets, including the Debtors' cash collateral (the "Cash Collateral").

In addition to the Bank, the UCC-1 lien reports (the "UCC Reports") obtained by the Debtors from Idaho, the state in which the Debtors are incorporated, indicate that additional other entities (the "Other Secured Parties") may have liens upon certain of the Debtors' assets. The Debtors believe that the liens of the Other Secured Parties only relate to particular equipment leased or purchased by the Debtors. Therefore, the Debtors do not believe that the liens of the Other Secured Parties extend to the Debtors' Cash Collateral.

It is imperative that the Debtors obtain immediate access to their Cash Collateral to pay their operating expenses for, among other things, rent, lease payments, insurance, salaries, wages, raw materials, shipping, utilities, taxes, marketing, etc. Without the ability to use Cash Collateral for these purposes, the Debtors would be forced to immediately shut down their business and cease operations, which would decimate the going concern value of the Debtors' and any chance for a an effective reorganization to the extreme prejudice of the Debtors' creditors and bankruptcy estates.

The Debtors' proposed operating budget (the "Budget"), a copy of which was filed as Exhibit "1" concurrently herewith, contains the expenses the Debtors believe must be paid in order for the Debtors to continue to operate and preserve the value of their business pending a reorganization. The expenses contained in the first few weeks of the Budget are those expenses the Debtors believe must be paid to enable the Debtors to avoid immediate and irreparable harm to the Debtors' business and bankruptcy estates. The revenues projected in the Budget are the revenues the Debtors project receiving if business proceeds as planned.

In addition to those expenses set forth in the Budget, the Debtors also seek authority to use Cash Collateral to pay for the following: (a) all quarterly fees owing to the Office of the United States Trustee and all expenses owing to the Clerk of the Bankruptcy Court; and (b) all actual third-party, outside expenses incurred by the Debtors (or their counsel) directly related to the

administration of the Debtors' bankruptcy estates (for items such as photocopying, postage, searches, etc.), not to exceed the total sum of $10,000 per month. In addition, the Debtors seek authority to deviate from the line items contained in the Budget by not more than 15% on a line item basis and not more than 10% on an aggregate basis. Finally, many of the Debtors' operating expenses are variable expenses which are tied to the Debtors' order volume. To the extent the Debtors' order volume exceeds the Debtors' projected order volume, the Debtors seek authority to increase the amount of their related variable cost operating expenses on a proportional basis.

As set forth in detail in the Memorandum of Points and Authorities in support of this Motion, the Debtors submit that the Bank and the Other Creditors will be adequately protected by (1) an equity cushion in excess of 20%, which, in and of itself, is adequate protection as a matter of law, (2) adequate protection payments as set forth in the Budget, (3) replacement liens, and/or (4) continued operation of the Debtors' business, which will preserve the value of the Debtors' assets, business and going concern value.

Pursuant to Bankruptcy Rule 4001(b)(2), while the Court cannot conduct a final hearing on this Motion earlier than 14 days after service of this Motion, the Court may conduct a preliminary hearing before such 14-day period expires to enable the Debtors to use Cash Collateral as is necessary to avoid immediate and irreparable harm to the Debtors' estates pending a final hearing. Such an expedited procedure is routine in Chapter 11 as it is the rare Chapter 11 debtor that can survive for 14 days or more without use of any funds. Given the nature of the Debtors' business (production of ice cream and water-ice novelty products), the Debtors have no ability to survive for more than a few days unless the Debtors are provided immediate use of Cash Collateral to continue with the operation of their business.

The Debtors have four (4) bank accounts (the "Accounts") at the Bank as follows:

| **Account Type and No.** | **Uses** |
|---|---|
| MGI<br>Parent Sweep Account<br>********3873 | All deposits into the other three accounts discussed below, net of checks cleared, are swept into this account on a daily basis. The Bank draws from this account to pay down the Line. |
| Vitafreze<br>Subsidiary Account<br>********4443 | Vitafreze deposits check payments into this account. Additionally, approximately 2 of Vitafreze's customers wire payments directly into this account. This account is also used to pay all Vitafreze |

| Account Type and No. | Uses |
|---|---|
| | vendors and employees. The remaining balance in this account is swept into the MGI Parent Sweep Account on a daily basis. |
| Deluxe Subsidiary Account ********4476 | Deluxe deposits check payments into this account. Additionally, approximately 3 of Deluxe's customers wire payments into this account. This account is also used to pay all Deluxe vendors and employees. The remaining balance in this account is swept into the MGI Parent Sweep Account on a daily basis. |
| Deluxe Payroll Account ********8881 | All credits from ADP, the Debtors' payroll processor, are deposited into this account. The balance in this account is swept into the MGI Parent Sweep Account on a daily basis. |

It would be impossible for the Debtors to immediately redirect wire deposits into the Vitafreze and Deluxe Subsidiary Accounts and the Deluxe Payroll Account. Thus, in order to maintain operations and Budget performance, it is essential that the Debtors be allowed to maintain the foregoing Accounts on an interim basis pending redirection of all deposits into debtor in possession accounts. Based on the foregoing, the Debtors request that they be allowed to maintain the Accounts and the pre-petition cash management system described above, with the following modifications:

1. The MGI Parent Sweep Account will be closed;

2. Each of the Debtors will immediately establish debtor in possession ("DIP") accounts at one of the banks appearing on the List of Authorized Depositories issued by the United States Trustee (the "UST") or otherwise approved by the UST;

3. All check deposits to Vitafreze and Deluxe will be deposited into the DIP Vitafreze Subsidiary Account or the DIP Deluxe Subsidiary Account, as appropriate;

4. All wire deposits into the Vitafreze Subsidiary Account, the Deluxe Subsidiary Account, and the Deluxe Payroll Account will be swept or transferred to the DIP Vitafreze Subsidiary Account or the DIP Vitafreze Subsidiary Account, as appropriate, on a daily basis (excluding weekends and holidays);

5. All deposits into the DIP Vitafreze Subsidiary Account and the DIP Deluxe Subsidiary Account, less retentions to cover wires and checks in transit, will be

swept or transferred to the DIP MGI Parent Account on a daily basis (excluding weekends and holidays); and

6. As soon as all wire deposits into the Vitafreze Subsidiary Account, the Deluxe Subsidiary Account, and the Deluxe Payroll Account have been redirected to the DIP Vitafreze Subsidiary Account or the DIP Vitafreze Subsidiary Account, as appropriate, the Vitafreze Subsidiary Account, the Deluxe Subsidiary Account, and the Deluxe Payroll Account will be closed.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order in substantially the form of the interim order on the Motion (the "Interim Order") filed as Exhibit "2" concurrently herewith and order as follows:

1. finding, among other things, that notice of this Motion was appropriate under the circumstances and complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules;

2. granting this Motion on an interim basis pending a final hearing insofar as it relates to Cash Collateral;

3. authorizing the Debtors, subject to the terms of the Interim Order, to use Cash Collateral to pay all of the expenses set forth in the Budget on an interim basis pending a final hearing;

4. providing the Bank with payments as set forth in the Budget as adequate protection;

5. providing the Bank and the Other Creditors with replacement liens as adequate protection;

6. setting a final hearing on this Motion hearing insofar as it relates to Cash Collateral;

7. granting this Motion on a final basis insofar as it relates to maintenance of the Accounts and the pre-petition cash management system;

8. authorizing the Debtors to maintain the Accounts and the pre-petition cash

management system as set forth in this Motion;

9. compelling the Bank to release all holds or freezes on the Accounts to the extent that holds or freezes are placed on any of the Accounts by the Bank pre- or post-petition;

10. ordering the Bank to promptly turnover to the Debtors all of the Debtors' funds which were in the Bank's possession or control at the time of the filing of the Debtors' bankruptcy cases and all funds which come into the Bank's possession or control after the time of the filing of the Debtors' bankruptcy cases for deposit by the Debtors into the Debtors' debtor-in-possession bank accounts;

11. absent the prior approval of the Court and other than with regard to the Bank's receipt of any adequate protection payments from the Debtors which have been authorized by order of the Court, ordering the Bank not to apply any of the Debtors' funds which were in the Bank's possession or control at the time of the filing of the Debtors' bankruptcy cases or any funds which come into the Bank's possession or control after the time of the filing of the Debtors' bankruptcy cases against the Bank's debt; and

12. granting such other and further relief as the Court deems just and proper.

Date: July 26, 2010

LEVENE, NEALE, BENDER, YOO
& BRILL L.L.P.

*/s/ Ron Bender*___________________________
RON BENDER
TODD M. ARNOLD
Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession